**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:13CV626-FDW-DSC**

| | |
|---|---|
| **AMMAR D. SWEET,** ) | |
|       **Plaintiff,** ) | |
| ) | |
|     vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
|       **Defendant.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum in Support ..." (document #10), both filed April 11, 2014, and Defendant's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed April 28, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on February 10, 2014, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

# I. PROCEDURAL HISTORY

On March 28, 2011, Plaintiff filed an application for a period of disability, Social Security Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") alleging that he was unable to work after January 1, 2010. (Tr. 13, 180-86).

Plaintiff's application was denied initially and upon reconsideration. Plaintiff subsequently requested a hearing which was held on June 19, 2012. (Tr. 26-67).

On August 3, 2012, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 10-21). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 16). The ALJ also found that Plaintiff suffered from anxiety and depression, which were severe impairments within the meaning of the regulations (Tr. 16), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 17). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform:

> [A] full range of work at all exertional levels but with the following non-exertional limitations: He is limited to doing simple, routine, repetitive tasks at non-production pace. He can work up to two hours at a time, but will need a ten minute break after each two hours. He can drive and he can make simple work-related decisions and adjust to work changes. He can occasionally interact with coworkers. He is not able to work as a team, but he is able to work around them occasionally. He can interact appropriately with supervisors, co-workers and the public.

(Tr. 19). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged. The ALJ further found that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was credible only to the

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

extent that it was consistent with the RFC set forth above. (Tr. 19). Based upon that RFC, the ALJ then found that Plaintiff could not perform his past relevant work as a cashier, short order cook, stock clerk or pizza deliveryman. (Tr. 20).

The ALJ properly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the above limitations, the Vocational Expert ("V.E.") identified jobs (cafeteria attendant and parking lot attendant) that Plaintiff could perform. The V.E. also stated that 18,930 of these jobs existed in North Carolina. (Tr. 21). The ALJ found Plaintiff capable of performing work existing in significant numbers in the national economy, and concluded that he was not disabled during the relevant period. Id.

Plaintiff filed a timely Request for Review by the Appeals Council. By notice dated July 22, 2013, the Appeals Council denied Plaintiff's request for further administrative review. (Tr. 1-7).

Plaintiff filed the present action on November 15, 2013. He assigns error to the ALJ's assessment of his RFC, specifically to his evaluation of the opinions of his treating psychiatrists Doctors Robert McHale and Chioma Ekechukwu, and to the ALJ's assessment of his credibility and subjective complaints. See Plaintiff's "Memorandum in Support ..." at 7-13 (document #10). Plaintiff also contends that the hypothetical submitted by the ALJ to the V.E. at Step Five was flawed. Id. at 13-16. The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review

of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so

4

long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled at any time.[3] Plaintiff argues that the ALJ erred in assessing his RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. It is the claimant's burden, however, to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff argues that the ALJ failed to give adequate weight to Doctors McHale and

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

Ekechukwu's opinions. The Fourth Circuit has held that a treating physician's opinion need not be accorded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

On May 9, 2012, Dr. McHale completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 313-320). He noted that he first examined Plaintiff on October 5, 2011. His most recent examination of Plaintiff was on November 10, 2011. (Tr. 313). Dr. McHale determined that Plaintiff's current Global Assessment of Functioning ("GAF") score was 58. (Tr. 313). A GAF score between 51 and 60 denotes moderate -- that is non-disabling -- symptoms or difficulties in social or occupational functioning. Diagnostic and Statistical Manual of Mental Disorders –Text Edition (DSM-IV) 34 (4th ed. 2000).

Dr. McHale also concluded that Plaintiff had marked - that is disabling -- limitations in his ability to understand and remember one-two step instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday or work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 316-317). Dr. McHale stated that Plaintiff was capable of

performing low-stress work (Tr. 319), and would miss about two to three days of work per month. Dr. McHale found that Plaintiff's symptoms and limitations existed since October 5, 2011 and possibly earlier. (Tr. 320).

On May 11, 2012, Dr. Ekechukwu completed a Psychiatric/Psychological Impairment Questionnaire. (Tr. 321-328). He first examined Plaintiff on January 5, 2012, and saw him once a month thereafter. (Tr. 321). Dr. Ekechukwu determined that Plaintiff's current GAF score was between 58 and 60. (Tr. 321). The doctor also concluded that Plaintiff had marked limitations in his ability to understand and remember one-two step instructions, maintain attention and concentration for extended periods, complete a normal workday or work week without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number or length of rest periods. (Tr. 324-325). Dr. Ekechukwu found that Plaintiff was capable of performing low-stress work (Tr. 327), but would miss two to three days per month. He stated that Plaintiff's symptoms and limitations existed since "before" January 5, 2012. (Tr. 328).

The ALJ noted the opinions from both psychiatrists in the decision (Tr. 17-18), but concluded that they were entitled to little weight. (Tr. 19). In reaching that conclusion, the ALJ found that Dr. McHale and Dr. Ekechukwu's mental functional capacity assessments that concluded Plaintiff was unable to work due to psychological impairments were inconsistent with GAF scores between 58 and 60. (Tr. 19). The ALJ's may afford less weight to a physician's opinion that contains an internal inconsistency. The regulations state that more weight is given to a provider's opinion when he presents relevant evidence to support his conclusion. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); see Neitch v. Astrue, No. 2:10CV68, 2011 WL 3705113, at *4

(W.D. Va. Aug. 24, 2011) (finding that the ALJ's decision to give minimal weight to the treating physician's opinion was reasonable due, in part, to internal inconsistencies in the assessment) (citing 20 C.F.R. § 416.927(c)(2) (authorizing the consideration of internal inconsistencies in determinations of weight)); Rawlings v. Astrue, No. 3:10-CV-46, 2010 WL 3384725, at *4 (E.D. Va. July 21, 2010) ("the ALJ properly discounted Dr. Ettigi's opinion because it contained internal inconsistencies.").

Contrary to Plaintiff's argument, the objective findings contained in his treatment records do not support Dr. McHale and Dr. Ekechukwu's opinions. On September 27, 2011, an examiner in Dr. McHale's office observed that Plaintiff's insight was fair, speech was normal, affect and mood were appropriate, he was oriented to three spheres, memory was intact, and thought flow was normal. (Tr. 293). Eight days later, Plaintiff reported to Dr. McHale that he was not taking any medication, and had no previous outpatient treatment. (Tr. 290). Dr. McHale noted that Plaintiff's eye contact was good (Tr. 290), speech was clear, psychomotor activity and thought content were unremarkable, thought process was clear, logical, and goal-directed, he denied suicidal ideation, affect was appropriate, he was alert and oriented to three spheres, and abstract reasoning, judgment, insight, and recent and remote memory were intact (Tr. 300). His GAF score was 58. (Tr. 298). The following month, Plaintiff told Dr. McHale that his concentration was fair and he denied any paranoid thoughts. (Tr. 305). The doctor further found that Plaintiff was alert and oriented to three spheres, speech was normal, mood was euthymic, affect was congruent with his mood, thought process was goal-directed, he had no memory impairment, judgment and insight were intact, and he denied hallucinations, delusions, or suicidal ideation. (Tr. 305). On February 1, 2012 and February 2, 2012, Plaintiff's mental health providers determined that he was alert and

oriented to three spheres, speech was normal, affect was appropriate, thought process was logical and goal-directed, thought content was within normal limits, he had no memory impairment, insight and judgment were intact, and he denied hallucinations, delusions, and suicidal ideation. (Tr. 311, 329). On February 2, 2012, Plaintiff's GAF score was 58. (Tr. 311).

On January 5, 2012, Dr. Ekechukwu observed that Plaintiff's motor activity and speech were normal, he was alert and oriented to three spheres, affect was appropriate, thought process was logical and goal- directed, thought content was within normal limits, there was no evidence of any memory impairment, judgment and insight were intact, and he denied hallucinations, delusions, and suicidal ideation. His GAF score was between 58 and 60. (Tr. 312). Dr. Ekechukwu made virtually identical findings on April 16, 2012. He noted that Plaintiff felt good, and was doing well on his current medication. Plaintiff's GAF score was 65. (Tr. 309).

Neither psychiatrist had an extensive treatment relationship with the Plaintiff. Dr. McHale noted in his May 2012 assessment that he first examined Plaintiff on October 5, 2011, and his most recent examination was on November 10, 2011. (Tr. 313). Dr. Ekechukwu noted in his May 2012 opinion that he first examined Plaintiff on January 5, 2012, and then saw him monthly. At most, the doctor examined Plaintiff four times prior to completing the assessment form. (Tr. 321, 328). This limited treatment does not provide the "detailed, longitudinal picture" of Plaintiff's impairments contemplated by 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2) that would justify the assignment of significantly more weight to the doctors' opinions. See also Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) ("Vega's March letter . . . is not entitled to controlling weight as a medical opinion of a treating source. When she filled out the checklist, Vega had only met with Randolph on three prior occasions.") (internal citations omitted).

9

The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels but with some non-exertional restrictions. He was limited to doing simple, routine, repetitive tasks at a non-production pace; he could work up to two hours at a time, but would need a ten minute break every two hours; he could drive, make simple work-related decisions, and adjust to work changes; he could occasionally interact with co-workers; he could not work as a team, but could work around a team occasionally; and he could interact appropriately with supervisors, co-workers, and the public. (Tr. 16). In reaching this determination, the ALJ set forth the evidence that supported his findings (Tr. 16-19). He discussed the findings from Dr. Cantley's consultative examination as well as Plaintiff's treatment records. There has been no showing that the ALJ's RFC finding was erroneous, or that his determination violated SSR 96-8p.

The ALJ provided adequate reasons for his decision to afford "little weight" to Doctors McHale and Ekechukwu's opinions. Those reasons are supported by substantial evidence.

Plaintiff also argues that the ALJ's assessment of his credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The ALJ is not required to discuss every factor enumerated in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The record contains evidence of Plaintiff's anxiety and depression – which <u>could</u> be expected to produce some of the symptoms he claimed. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. This determination is supported by substantial evidence.

The ALJ thoroughly reviewed Plaintiff's subjective complaints, and set forth the two-part standard for evaluating those complaints. (Tr. 16). The ALJ also discussed Plaintiff's medical treatment, medication, and activities of daily living. (Tr. 17). The ALJ found that Plaintiff's testimony was credible only to the extent that it was consistent with his RFC . (Tr. 18). In reaching that determination, the ALJ found that despite Plaintiff's complaints and mental health treatment between September 27, 2011 and April 12, 2012, the objective findings in the record did not support the extent of the limitations alleged. (Tr. 18). The ALJ discussed Plaintiff's mental health

11

treatment and examinations findings from September 27, 2011, October 5, 2011, November 10, 2011, January 12, 2012, and April 12, 2012. (Tr. 17). As discussed above, he considered the assessments from Doctors McHale and Ekechukwu and evaluated their opinions. (Tr. 17-19). The ALJ noted that while Plaintiff claimed complications from anxiety and depression, the objective findings established that he could perform simple, routine, repetitive tasks if he complied with his medication. (Tr. 18). "[A]n unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility." Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir.1994). Plaintiff failed to demonstrate that his mental impairments impeded his ability to seek treatment. It is Plaintiff's burden to establish his functional limitations, and he failed to point to any evidence that his judgment or his ability to care for himself were limited. Plummer v. Astrue, No. 5:11cv-006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.), adopted 2012 WL 1858844 (May 22, 2012), aff'd 487 Fed. Appx. 795 (4th Cir. 2012) ("[t]he claimant bears the burden of providing evidence establishing the degree to which [his] impairments limit [his] RFC.").

The ALJ further noted that Plaintiff's testimony and statements to Dr. Cantley in June 2011 were exaggerated when compared to his complaints to his psychiatrists. (Tr. 18-19). The ALJ added that the medical evidence showed that Plaintiff had no history of long-term inpatient treatment, regular outpatient treatment, or prescribed medication therapy for his psychological problems, and that his psychological problems should not affect his ability to perform simple, routine, repetitive tasks. (Tr. 19). Ultimately, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that

his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with his RFC covering a range of all exertional work. (Tr. 16, 19).

Finally, Plaintiff assigns error at Step Five, contending that the hypothetical the ALJ submitted to the V.E. was flawed. Id. at 13-16. Having concluded that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence, this assignment of error fails as well.

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that Plaintiff was not disabled.

## IV. <u>RECOMMENDATIONS</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: May 6, 2014

_____
David S. Cayer
United States Magistrate Judge